and we move to the second case. Second case is Ms. Black versus Mr. Wrigley and we'll proceed with Ms. Black. Yes, good morning, Your Honor. May it please the Court, Katherine Black, pro se. This case involves one important issue of first impression that might have potential presidential value for this Court, so I would like to concentrate on this issue of first impression and for narrow factual issues of the case, I will refer to my briefs that have detailed citations to the record. So the core issue of the case has two parts. First part is, is it abuse of discretion for the judge to refuse to allow a litigant to be seated? And second part is, whether it is abuse of discretion for the judge to coerce an attorney into continuing representation while the attorney is incapacitated by threatening the attorney with jail and contempt if he fails to continue representation. So the first sub part of the question, is it abuse of discretion not to permit the party to replace a clearly incapacitated attorney in the middle of a trial when the attorney's incapacity is conceded during trial by the attorney himself and by the judge and by the litigant? And when the litigant asks the judge to either bring a different attorney or to represent herself for the remainder of the trial without any loss of the trial time and therefore without any prejudice to defendants? And the judge refused. So that's the issue number one. If you asked to bring a different attorney? Yes, I did. But you had two attorneys. There was another attorney there. Yes, Your Honor. So there are two problems with this. So first, when the judge said that my original attorney must appear and must continue representation at the threat of jail and sanctions, everybody interpreted this as that he is the one who has to continue to be there. He made personal promises to the judge in the middle of a trial. And I made personal promises to the judge in the middle of a trial to allow him to continue representing. And I believe those promises were made under coercion because the judge told us that if we were not to make those promises, he will force the attorney who's in the middle of a courtroom to continue trial right on the spot. So that's one part. We all interpreted this as Hamik has to continue representing. And second part is the side attorney was not a trial attorney. She was unable and unwilling to continue representation. And I think we all understood this, including the judge. So let me continue with the corollary issue, which is, is it abuse of discretion for the court to threaten an attorney with contempt and jail to force an attorney to return back to the courtroom the next working day to represent the client when the attorney is visibly incapacitated? An attorney has no way of knowing whether he will still be incapacitated on the next business day, and on the next business day. But he was forced to make these promises. I will posit to you your honors that such a threat by the court forces attorney to violate the duties of professional responsibility and fiduciary duties to the client. The attorney has a duty to stop representation when the representation is not capable, when the attorney knows he cannot continue. But when the attorney faces the threat of jail or contempt, he must violate the duty. We cannot rely on the attorneys willingness to go to jail for the benefit of the client. This puts the attorney and the litigant into untenable position of having attorneys act as heroes who are willing to sacrifice their own freedom and at the risk of sanctions for the benefit of the client. So in the portion of the transcript there on that Friday, if I remember correctly, was extraordinary. I don't think I've ever read anything quite like it, or seen it, where the district judge was making very clear his view that you and your attorney were trying to game the system. That's the kind of view where we usually take a pretty deferential approach to a district judge's management of the courtroom. Could you address those views of the district court as the reasons he gave for this decision? Yes, your honor. Let me give you pieces of what the attorney was actually doing in the courtroom for you to get a sense of whether this is gamesmanship on my part or whether the attorney truly was incapacitated. So page 144 of the appendix. Court, what we are talking about, to be blunt, is your emotional preparedness to do this. Mr. Homick, well I guess set me up for malpractice, whatever. I am now talking to you. Set me up. I don't care. I really don't care anymore, judge. Page 163. Mr. Homick, judge, I need to put this on the record right now. I am physically ill right now. I am physically ill right now. Judge, on what's transpired, I don't know what else to say except to put this on the record. I am physically unable to continue with the closing argument today. Page 164. The court, how do I know that you're going to just show up on Monday and say, judge, I'm still ill and I cannot do this? Homick, I will tell you, judge, hold me in contempt. I am physically ill right now. I am. I'm sorry. I hate to say this in front of the courtroom full of people. I cannot do this right now. So, your honor, I'm trying to understand how this record can be interpreted as my manipulations or misrepresentations of something or misbehavior. This attorney was falling apart in the middle of a courtroom. This record, which is only written and is very dry, does not express the full degree of incapacity and horror of what was happening in the courtroom. He was sobbing. He was crying literally with tears. He was shaking. He was bailing in high pitches. He was turning to me. He was begging me. He was begging the court. And the district court gave you the weekend off, right, and then came back for closings on Monday? Correct. Your honor, this attorney is deeply incapacitated. It cannot be cured by a single day of rest. And of course, it wasn't cured by a single day of rest. And so, to summarize this, it has to be a reversible error that when there is a threat and coercion by the court forcing incapacitated attorney to proceed with a litigant. So, in De Silva v. De Leonardi, this court said that none of the attorneys in that case was foisted on a civil litigant by the United States. When the government supplies the lawyer, it must furnish a competent one. Well, in this case, I posit to you that this attorney was foisted. This attorney was crying and begging to get out of a case, and the court said no, at the threat of jail and contempt. So, let me make very clear what this case is not about. Oh, I'm out of time. This is not an issue of ineffective assistance of counsel. This is an issue of a judicial unwillingness to allow an incapacitated attorney to stop representation and force incapacitated attorney on trial. Thank you. Thank you, counsel. Good morning, your honors. Andrew Mancia and my partner Robert Fantone on behalf of Cherie Wrigley. Mr. Fantone will be making arguments with respect to Ms. Kerr. The appellant has argued now that, you know, she's focusing on her attorney incapacity argument, and that argument in and of itself is undermined and belied by the record. She just represented to the court that the attorney was incapacitated and would not be able to continue. She cited to a transcript page, it's actually 936, in which later on in that discussion, her attorney at the time, Mr. Homick, actually stated, I tried, I tried in this last hour to kind of, we tried to pull ourselves together. And I know we can do that by Monday. But the truth is, I don't believe we can now. And so the issue was that the court adjourned the case until Monday to allow him to collect his thoughts. He may have just been unprepared. He may have had some sort of breakdown with the appellant. We're not sure. But regardless, what it was, was a brief adjournment so that Mr. Homick could, you know, collect his thoughts and present his summation. And that's exactly what he did. If the court reviews his summation, it wasn't an incapacitated summation. It was thorough. He made arguments based on the evidence. And it in some regards was persuasive. It by no means was ineffective. And by no means it was constitutes incapacity that would warrant reversing the trial court's decision. That's really the summation of the argument. I mean, she had a right at the outset to choose her own counsel. And this is a civil case, she doesn't have a Sixth Amendment right to effective assistance of counsel, as in criminal cases. And so you have a situation where she's from criminal cases into a civil case. And it's, of course, well aware the circuit has in the Supreme Court simply denied that. We have other arguments and other issues that we can discuss. I'm not sure if the court is interested in hearing any and I was anticipating that she would actually make additional arguments regarding what was the bulk of her claims of error. Her claim of error regarding her attorney only happened in at summation. So after all the evidence was admitted, after all of the objections were raised or not raised and waived, and so it didn't really have an impact. So even assuming, you know, that it was an error for the court to deny her right to have a new attorney or to adjourn the case or to allow her to continue pro se, it wouldn't have affected the outcome of the trial. All the evidence was already in at that point. Vincia, can I ask you to just take a moment to address one of the evidentiary questions that's been raised in the briefing, and that is the exclusion of the transcript from the Colorado court hearing. I will defer to my colleague, Mr. Cantone. He'll handle that. If there's nothing further, I'm happy to hand it off to him. Thank you, counsel. Thank you. Good morning, Your Honors. Good morning. Robert Fantacone speaking on behalf of Pamela Kerr. I'd like to take a minute to appreciate the court accommodating both Mr. Mancy and myself in argument today. We appreciate that. To get right to the question regarding the transcript, first of all, if you look, if you review the transcript, it's really irrelevant. This is the district court judge found. I don't want to speak generally. We can just get right to it. Plaintiff essentially claims that in that transcript, it reflects that the court made credibility findings. Well, sorry, found allegations of misconduct against an individual named Esan Pinto, credible enough to authorize or order an investigation. Plaintiff says that this transcript supports her claim. If you look at the transcript, the whole transcript is the appendix at 75 to 136. I'm specifically talking about page 91, which is page 17 of the transcript. This is one of the portions that plaintiff cites in support of her argument. It's essentially plaintiff's husband, Bernard Black's attorneys putting forth allegations. You know, the court doesn't really make a comment on that. I'm sorry. I'm looking at page 29, which is appendix 103. Other than to say, I know there was a dispute. Frankly, I think her strongest point to give her the benefit of the doubt. I'm looking at appendix page 116. The court says at this point, I'm satisfied. I don't think Mr. Pinto should become the rep payee. There's too many issues surrounding whatever expenses he's got to provide a full accounting. So what this is, is the court recognizing that an allegation has been put forth. Again, this is a probate court. It's extremely, I mean, it's a natural consequence of an allegation to order an accounting. It's almost procedural. There's no recognition here in the credibility of any allegations. The way that plaintiff portrayed it in her letter, you know, gives the impression that these allegations were credible, substantiated. This is not that. I mean, your honors can read it for yourself. It's a recognition that an allegation was made. And that's all, that's all it is. And just to put this into context, this transcript is dated April 2nd, 2015. Following this was a trial in the probate court in which Mr. Pinto was examined, was cross-examined. That occurred through the summer of 2015. There was a finding and a verdict September 2015. The letter in which plaintiff's comment is contained is dated January. So just, I mean, from the defendant's perspective, there already was a trial. You know, it didn't, there was no findings against Mr. Pinto. As a result of the trial. And, you know, months later in a letter dated January 2016, plaintiff is then citing language from a pre-trial transcript that recognizes that there was an allegation. Um, I don't know that there's a whole lot more to it. Um, I don't, I don't see this as an abuse of discretion by the trial court. Um, I don't, I don't know how it could be, you know, frankly, addition, uh, sorry. If you look at page 17, which is the first page that I referred to, you'll also see that Ms. Kerr wasn't present for the conference. I don't know if it's apparent. Um, it should be apparent from the transcript that this was a, uh, telephone court appearance. So Ms. Kerr wasn't even there, uh, which another reason why this transcript's irrelevant. She had no knowledge of it. Uh, knowledge isn't, you know, necessity, uh, uh, mens rea element of the defamation charge. So she doesn't know about it. It doesn't contain any findings. It's irrelevant. Even if it has some probative value, uh, the transcripts extremely lengthy, 90% of it contains conversation regarding Bernard Black and in, in his, uh, misconduct and investigation. I see that my time's running out. Um, I'll just finish with it. It doesn't seem fair to let in just these snippets without the entire portion, which is what a thank you counsel, your honor. Um, the defense council, as usual, misrepresented the record. Pinto was not a trial. He was not examined or cross-examined at any trial. There were no findings, you know, finding Pinto not guilty of anything. There was simply party Pinto was not party anywhere. There were no findings in favor of him at all, but let me get back. And also in the defamation case is strict liability. So curse presence in the courtroom is completely irrelevant for the defamation case period. But let me get the issue of, um, how attorney incapacity is prejudicial to me. If I were allowed to bring a different attorney or represent myself, I would have delivered a coherent closing argument, which my attorney failed to do objected to defendants closing arguments. Their closing arguments defense was so atrocious. It made numerous false statements, misrepresenting the record. And I would have objected to all of the above. My counsel was unable to object because he could not hear the arguments. Third, I would have moved to admit the correct portion of my letter so that when, um, the jury is making determinations as to the defamation case claim, it actually sees the correct portion of the letter to which the defamatory language is referring. I would have submitted the correct jury instructions. I would have filed the rule 50 motion. I would not have waived any objections. There was still time to preserve all objections. As you go through their brief, their sole defense on most of the things is they waive, they waive, they waive. Every single one of these favors could have been avoided if a different attorney was present at trial, or if I were doing this, there was still time. There was severe prejudice to me. And I know I can see that I'm out of time. Thank you, counsel. Thanks to both counsel and the case will be taken under advisory.